UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ERIC HAFNER,

                *Plaintiff*,

– against –

NEW YORK STATE BOARD OF ELECTIONS, HENRY BERGER, *individually and in his official capacity as Co-Chair of the New York State Board of Elections*, PETER KOSINSKI, *individually and in his official capacity as Co-Chair of the New York State Board of Elections*, EMMA BAGNUOLA, *individually and in her official capacity as Commissioner of the New York State Board of Elections*, ANTHONY CASALE, *individually and in his official capacity as Commissioner of the New York State Board of Elections*,

                *Defendants.*

**MEMORANDUM & ORDER**
23-cv-09517 (NCM) (PK)

---

**NATASHA C. MERLE**, United States District Judge:

      Plaintiff Eric Hafner seeks to run for election to the U.S. House of Representatives in New York as an independent candidate in special elections. Am. Compl. ("AC") 3, ECF No. 16.[1] He is currently incarcerated in a federal prison, with a projected release date of 2036. AC 3. Proceeding pro se, he sues the New York State Board of Elections (the "NYSBOE") and its members in their individual and official capacities. AC 6; Suppl. to AC 1, ECF No. 18; Order dated January 29, 2025. Plaintiff alleges that a requirement New York state election law imposes on would-be independent candidates—to submit a

---

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

1

nominating petition with signatures from a specified number of registered voters—is unconstitutional as applied to him because his incarceration prevents him from gathering the necessary signatures. AC 4–5.

On May 12, 2025, defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mem. of Law in Supp. of Defs' Mot. to Dismiss ("Mot."), ECF No. 30. Plaintiff filed a response. *See* Ltr. Resp. in Opp'n to Defs. ("Opp'n"), ECF No. 32. Defendants filed a reply. *See* Reply, ECF No. 33. For the reasons stated below, defendants' motion to dismiss is **GRANTED**.

## BACKGROUND

Prospective candidates for office in New York can earn a place on the general election ballot via two routes: as the nominee of a political party or as the nominee of an independent body. *See Walden v. Kosinski*, 153 F.4th 118, 124 (2d Cir. 2025); *see generally* N.Y. Elec. Law §§ 6-100 to -212 (McKinney 2025). State law defines a "political party" as an organization whose candidates for Governor of New York and President of the United States, in their respective preceding elections, each received at least two percent of the total votes cast or 130,000 votes, whichever is greater. *Walden*, 153 F.4th at 124 (citing N.Y. Elec. Law § 1-104(3)). Political parties may automatically place a candidate on the general election ballot, with no need to solicit and submit signatures from registered voters. *Id.* (citing N.Y. Elec. Law §§ 6-104, 6-110, 6-120). Meanwhile, the law defines an "independent body" as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a [political] party." N.Y. Elec. Law § 1-104(12). "Unlike a political party, an independent body is not given automatic access to the ballot at elections. Rather, to run as the nominee of an independent body, a prospective candidate must obtain a prescribed number of signatures from registered

2

voters on an independent nominating petition." *Walden*, 153 F.4th at 124–25 (citing N.Y. Elec. Law §§ 6-138, 6-142, 6-144, 6-158).[2] Prospective independent candidates for a U.S. House of Representatives seat typically must obtain 3,500 signatures from registered voters within the relevant congressional district, but if fewer than 70,000 votes were cast in the district during the last gubernatorial election, the number of signatures need only equal five percent of the number of votes cast. N.Y. Elec. Law §§ 6-138, 6-142.

Typically, elected offices in New York are filled via general elections held at regularly scheduled intervals. New York law also establishes procedures for proclaiming and holding a special election under certain circumstances should a vacancy arise. *See* N.Y. Pub. Off. Law § 42. If a prospective candidate seeks to run as the nominee of an independent body in a special election, the candidate generally must file an independent nominating petition with the requisite signatures "not later than twelve days following the issuance of a proclamation of such election." N.Y. Elec. Law § 6-158(9).

Plaintiff is an indigent, incarcerated individual who intends to run in special elections for the U.S. House of Representatives in New York as an independent candidate. AC 3–5. Plaintiff's current projected release date from incarceration is in 2036. AC 3. Plaintiff's initial complaint, filed on December 21, 2023, stated that he intended to run in a 2024 special election to fill a vacant seat for New York's third congressional district. Compl. 6–7, ECF No. 1. On January 8, 2025, plaintiff filed an Amended Complaint noting that the 2024 special election for the third congressional district had since passed but that plaintiff also intends to run in future special elections in New York, including a special election for the U.S. House of Representatives seat held by Representative Elise Stefanik,

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

which he expected to become vacant. AC 3–4. As of the date of this order, no document in the record indicates that the seat held by Representative Stefanik has, in fact, become vacant.

Plaintiff's complaint alleges that New York's signature-gathering requirement is unconstitutional as applied to him. AC 5. He asserts that because of his incarceration, he cannot collect signatures himself, and because of his indigence, he cannot afford to pay a signature-gathering company to collect signatures for him. AC 5. Plaintiff argues that these restrictions, as applied to him, amount to a violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution. AC 6.[3] Additionally, plaintiff challenges the constitutionality of New York requiring signatures for independent candidates in special elections while automatically granting political parties ballot placement. AC 4. Defendants now move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Mot.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to

---

[3] Plaintiff also challenges "any in-person requirements" for running in U.S. House of Representatives races but does not identify what—if any—such requirements New York maintains.

4

relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

### I. Mootness

Federal courts are courts of limited jurisdiction that may only hear "cases" or "controversies" under Article III of the U.S. Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). One requirement for a dispute to qualify as a "case" or "controversy" under Article III is that the matter must not be moot. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A "case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* However, the Supreme Court has recognized an exception to the requirement for a live issue if a dispute is "capable of repetition, yet evading review." *Norman v. Reed*, 502 U.S. 279, 288 (1992) (quoting *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)). For a case to be capable of repetition, yet evading review, two conditions must exist: "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration [i.e. evading review], and there must be a reasonable expectation that the same complaining party would be subjected to the same action again [i.e. capable of repetition]." *Freedom Party of N.Y. v. NYSBOE*, 77 F.3d 660, 663 (2d Cir. 1996) (brackets in original) (quoting *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992)). With respect to litigation regarding elections, the

"passage of an election does not necessarily render an election-related case moot" because, depending on the exact circumstances, "such cases may fit within the category of capable of repetition, yet evading review." *Id.* at 662.

The present case is justiciable because it fits cleanly within the category of capable of repetition, yet evading review. First, with respect to the "evading review" prong, New York law requires that a prospective independent candidate for a special election submit a nominating petition with the requisite signatures "not later than twelve days following the issuance of a proclamation of such election." N.Y. Elec. Law § 6-158(9). New York's acceptance of independent nominating petitions only during a twelve-day window qualifies as an action "too short to be fully litigated prior to its cessation or expiration." *Freedom Party*, 77 F.3d at 663; *see, e.g.*, *Orazio v. Town of North Hempstead*, 426 F. Supp. 1144, 1146 (E.D.N.Y. 1977) (holding that a 19-day window was too brief to litigate a challenged action); *Vanda Pharms., Inc. v. FDA*, 123 F.4th 513, 523 (D.C. Cir. 2024) (holding that a 60-day window was too brief to litigate a challenged action). Second, with respect to the "capable of repetition" prong, plaintiff alleges that future special elections for U.S. House of Representatives seats in New York are "reasonably expected to occur" and that he intends to run for them as an independent candidate. AC 3. Moreover, plaintiff states that he has previously been a candidate for the U.S. House of Representatives on at least three occasions in Hawaii, Oregon, and Alaska. AC 5. Given that plaintiff's term of incarceration will run for an additional ten years, that special elections for U.S. House of Representatives seats in New York occur periodically, that plaintiff has stated he intends to run in such elections when they occur, and that plaintiff has a demonstrated history of running in past congressional elections, the Court finds it "plausible" that plaintiff will seek a place on the ballot in future special congressional

6

elections in New York. *Twombly*, 550 U.S. at 570. Both elements of the "capable of repetition, yet evading review" exception to the mootness doctrine are thus met here. *See Freedom Party*, 77 F.3d at 663. Accordingly, even though the 2024 special election for New York's third congressional district has passed, and even though plaintiff has not alleged that any specific special election is currently scheduled, the Court finds that this case is not moot.

## II. Claims against Defendant NYSBOE

Plaintiff's claims against one of the defendants—the NYSBOE—must be dismissed because they are barred by sovereign immunity. Under the Eleventh Amendment to the U.S. Constitution, state governments and their agencies generally cannot be sued in federal court. *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015) ("The Eleventh Amendment bars suits against a state in federal court unless that state has consented to the litigation."). "A state may only be sued in federal court if it has waived its own immunity[] or if Congress has limited the state's immunity." *Janczuk v. United States*, Nos. 24-cv-03128, 24-cv-03141, 2024 WL 4350689 at *2 (E.D.N.Y. Sep. 30, 2024) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). The NYSBOE is entitled to sovereign immunity because it is an arm of New York State and plaintiff has not identified any basis to conclude that New York waived its sovereign immunity or that Congress abrogated its sovereign immunity. Accordingly, defendants' motion to dismiss must be granted to the extent it seeks to dismiss claims against the NYSBOE.

## III. Fifth Amendment Claim

Plaintiff's claim under the Fifth Amendment must be dismissed because he challenges the constitutionality of a state law while the Fifth Amendment's Due Process Clause regulates only the conduct of the federal government. *See Mitchell v. Home*,

7

377 F. Supp. 2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials."). Accordingly, defendants' motion to dismiss must be granted to the extent it seeks to dismiss plaintiff's Fifth Amendment due process claim against state officials.

    IV.    <u>First and Fourteenth Amendment Claims</u>

Plaintiff's remaining claims are that the signature-gathering requirement violates his rights under the First and Fourteenth Amendments. "It is well settled that the First Amendment protects the rights of candidates and their supporters to organize, access the ballot, and vote for the candidate of their choice." *Tiraco v. NYSBOE*, 963 F. Supp. 2d 184, 197 (E.D.N.Y. 2013) (quoting *McMillan v. NYSBOE*, No. 10-cv-02502, 2010 WL 4065434, at *10 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011)). Meanwhile, the Fourteenth Amendment's Equal Protection Clause prohibits states from engaging in discrimination "by adopting out of discriminatory animus policies which are facially neutral but have a discriminatory effect, or by applying a facially neutral policy in a discriminatory manner." *Id*. at 199 (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006)).

Although normally these constitutional rights are evaluated under the framework of strict scrutiny, federal courts use a distinct framework in the context of state election rules that create "barriers tending to limit the field of candidates." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 274 (2d Cir. 2021) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). The U.S. Constitution grants state legislatures broad power to set the "Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4, cl. 1; *see also SAM Party*, 987 F.3d at 274 (quoting *Wash. State Grange v. Wash.*

8

*State Republican Party*, 552 U.S. 442, 451 (2008)). In light of this authority and interest in regulating elections, the Supreme Court has recognized that "[t]o subject every voting regulation to strict scrutiny . . . would tie the hands of [s]tates seeking to assure that elections are operated equitably and efficiently." *Burdick*, 504 U.S. at 433. "Accordingly, the mere fact that a [s]tate's system creates barriers tending to limit the field of candidates from which voters might choose does not of itself compel close scrutiny." *Id*. Instead, courts examine First and Fourteenth Amendment challenges using a balancing test derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick* known as the *Anderson-Burdick* balancing test. *See SAM Party*, 987 F.3d at 274; *see also Murray v. Cuomo*, 460 F. Supp. 3d 430, 444–45 (S.D.N.Y. 2020).

Under the *Anderson-Burdick* test, the Court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. While undertaking this inquiry, "the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id*. Weighing these interests, if the Court concludes that the plaintiff's "rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman*, 502 U.S. at 289); *see also Lerman v. Bd. of Elections*, 232 F.3d 135, 145 (2d Cir. 2000). On the other hand, if "a state election law provision imposes only reasonable, nondiscriminatory restrictions," then "the State's important regulatory interests are generally sufficient to justify the

restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788); *see also Lerman*, 232 F.3d at 145.

Plaintiff is not the first individual to challenge the constitutionality of New York's ballot access framework, and "the Second Circuit has repeatedly upheld [New York's] signature requirements as constitutional, finding that 'a requirement that ballot access petitions be signed by at least 5% of the relevant voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement.'" *Dekom v. New York*, No. 12-cv-01318, 2013 WL 3095010, at *15 (E.D.N.Y. June 18, 2013) (quoting *Prestia v. O'Connor*, 178 F.3d 86, 87 (2d Cir. 1999)), *aff'd*, 583 F. App'x 15 (2d Cir. 2014) (summary order); *see also Hewes v. Abrams*, 884 F.2d 74, 75 (2d Cir. 1989); *McMillan v. N.Y. Bd. of Elections,* 234 F.3d 1262 (2d Cir. 2000) (summary order). The Court nevertheless examines the constitutionality of the signature requirement as applied to plaintiff's specific circumstances.

### A. Constitutionality of New York's Signature Requirement As Applied to an Incarcerated, Indigent Prospective Candidate.

Beginning with the burdens that the regulation imposes on plaintiff as an incarcerated and indigent individual, the Court determines that the ballot access requirement inherently burdens plaintiff's First Amendment protections for ballot access. *See Rivera-Powell*, 470 F.3d at 468 (discussing the "First Amendment rights to organize, access the ballot, and vote for the candidate of [one's] choice"). However, the burden is not unduly severe. It is true that plaintiff cannot personally go door to door gathering signatures from the public. But this does not prevent plaintiff from complying with the signature requirement; plaintiff has other means by which he can amass the necessary signatures. Notably, plaintiff can do what many other political candidates do—solicit

10

volunteers to gather signatures on the candidate's behalf. Indeed, the Supreme Court has explicitly stated that it is "unimpressed" with arguments that burdens imposed by a signature-gathering requirement are too onerous given that "[h]ard work and sacrifice by dedicated volunteers are the lifeblood of any political organization." *Am. Party of Tx. v. White*, 415 U.S. 767, 787 (1974). Plaintiff argues that he cannot, within 12 days of the proclamation of a special election, "somehow coordinate a massive . . . voter signature gathering operation at the snap of his fingers from a prison cell." Opp'n 2. But just as New York law does not require plaintiff to collect the signatures personally, the law also does not require him to personally coordinate a signature-gathering operation—plaintiff could instead have a supporter of his campaign coordinate the collection of signatures. Finally, plaintiff argues that because he is indigent, he cannot pay professional canvassers to solicit signatures for him. AC 5. But plaintiff can, as many other candidates do, seek out political donations to his political campaign and use the donations to pay professional canvassers. Though plaintiff undoubtedly faces greater difficulty clearing the signature requirement than he would were he not incarcerated and not indigent, the Court is not persuaded that these burdens are insurmountable.

Plaintiff's principal argument for the severity of the burden is based on *U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995). Opp'n 2. The facts of that case are unlike those here. *Thornton* involved a state law that imposed term limits on Members of Congress, which made it legally impossible for certain individuals to be listed on the ballot, not merely more difficult. *See Thornton*, 514 U.S. at 783–84. By contrast, New York's signature-gathering requirement does not absolutely prohibit anyone from getting on the ballot—it simply imposes burdens that will be easier for some individuals to overcome than others.

11

Furthermore, plaintiff's arguments bear similarity to arguments already considered and rejected by the Second Circuit. In *Dekom*, plaintiffs with disabilities seeking to run for office argued that New York's signature requirement "violate[d] the Equal Protection Clause of the Constitution because the process favors . . . nondisabled candidates, who can more easily do the physically demanding task of going door-to-door to obtain the requisite number of signatures." *Dekom*, 2013 WL 3095010, at *13. Plaintiffs also argued that the physically demanding nature of the signature requirement more broadly violated "fundamental rights as protected by the First and Fourteenth Amendments" because gathering signatures was, for plaintiffs, unduly burdensome. *Dekom*, 2013 WL 3095010, at *14. The district court rejected each of these arguments, *Dekom*, 2013 WL 3095010, at *13–15, and the Second Circuit affirmed the decision, *Dekom*, 583 F. App'x 15 (summary order). In rejecting related claims that the signature requirements violate the Americans with Disabilities Act and the Rehabilitation Act, the district court explained that the plaintiffs were "in no way excluded from obtaining signatures and submitting designating petitions. Although Plaintiffs' disabilities may make it more difficult for them to individually canvas neighborhoods to obtain signatures, [New York] does not require candidates to *personally* collect signatures. In fact, it is expected that volunteers will assist candidates in obtaining signatures." *Dekom*, 2013 WL 3095010, at *12. The district court also noted that "the very purpose of the petitioning process is to separate candidates on the basis of their support, which includes the support of volunteers needed to gather the requisite number of signatures." *Id.* (quoting *LaRouche v. Kezer,* 990 F.2d 36, 41 (2d Cir. 1993)).

Turning next to the State of New York's interests, the state maintains the signature requirement given its "interest in assuring that there is public support for specific

12

candidacies." Mot. 14. The Supreme Court has expressly noted that "[s]tates may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986). Courts widely agree that states are entitled to limit ballot-access via laws requiring the collection of signatures. For example, the Second Circuit has noted that states "have an important interest in requiring some preliminary showing of a significant modicum of support before printing a candidate's name on the ballot, so as to avoid confusion, deception, and even frustration of the democratic process at the general election." *Prestia*, 178 F.3d at 88 (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)) (finding a 5% signature ballot access requirement constitutional "despite any burden on voter choice that results when . . . a petition is unable to meet the requirement"); *see also SAM Party of N.Y. v. Kosinski*, 576 F. Supp. 3d 151, 165 (S.D.N.Y. 2021), *aff'd sub nom.*, *Libertarian Party of N.Y. v. NYSBOE*, No. 22-cv-00044, 2022 WL 10763416 (2d Cir. Oct. 19, 2022) (summary order).

Comparing plaintiff's burdens to the state's interests, the Court concludes that plaintiff has failed to state a claim that the signature requirement, as applied to him, falls beyond the scope of the *Anderson-Burdick* balancing test. Plaintiff's rights are not subject to "severe" restrictions, but rather restrictions that are "reasonable" under the circumstances given the state's important and widely-recognized regulatory interests. *Burdick*, 504 U.S. at 434. Accordingly, plaintiff has failed to plausibly state a claim that the signature requirement is unconstitutional as applied to him, and plaintiff's claims premised on this theory must be dismissed.

>  B.  *Constitutionality of New York's Differing Requirements for Independent Candidates and Party Nominees*

Separate from plaintiff's status as an incarcerated and indigent individual, plaintiff challenges the constitutionality of New York's policy of requiring that independent candidates collect signatures to access the special election ballot but permitting political party nominees to access the special election ballot without either collecting signatures or winning a primary election. AC 4 ("Under NY state law (N.Y. Elec. Law § 6-142), political parties are guaranteed ballot placement in special elections, and there is no primary process, yet candidates who are independent/'independent bodies' must nominate candidates through independent nominating petitions, which must include signatures of a specified number of registered voters."). Plaintiff argues that this differential treatment is unconstitutional, presumably because plaintiff believes it violates the Equal Protection Clause of the Fourteenth Amendment. AC 5.

The Court concludes that plaintiff has failed to state a claim that New York's differential treatment of independent candidates and party nominees in special elections is unconstitutional. The Second Circuit previously held that it did not violate the Equal Protection Clause for New York to require independent candidates to gather more signatures than major party candidates. *Kuntz v. N.Y. State Senate*, 113 F.3d 326, 328 (2d Cir. 1997). The only material differences between the present case and *Kuntz* are that (1) in *Kuntz*, major party candidates still needed to collect 625 signatures, *id.* at 328, whereas the current suit concerns special elections where major party candidates need not collect any signatures, and (2) *Kuntz* centered on a general election where major party candidates had already won a primary election, *id.* at 327, 329, while the current suit focuses on

14

special elections where political parties may place a candidate on the ballot without that candidate having won a primary election.

The Court finds that neither difference between the present facts and *Kuntz* leads to a violation of the Equal Protection Clause. First, the fact that party nominees for special elections do not need to collect any signatures does not render the signature requirement for independent candidates unconstitutional. The Supreme Court previously upheld a Georgia law under which independent candidates were required to collect a specified number of signatures but candidates who had won the primary of a major party were not required to collect any. *Jenness*, 403 U.S. at 433. Thus the fact that New York requires independent candidates to collect signatures to earn special election ballot access is constitutional even though New York does not require party nominees to collect any signatures to earn the same special election ballot access.

Second, the fact that major party candidates may appear on special election ballots without previously winning a primary election likewise is insufficient to state a claim that New York's statutory scheme is unconstitutional. To be sure, part of *Kuntz*'s rationale for upholding a lesser signature requirement for major party candidates was that "[c]andidates who have won their party's primary have already demonstrated a substantial level of support, unlike independent candidates." *Id.* at 328. The fact that New York currently permits major party candidates to appear on special election ballots without either collecting signatures or winning a primary thus makes the constitutionality of the instant law a slightly closer question than the constitutionality of the law in *Kuntz*. Nevertheless, this difference does not render New York's law unconstitutional. At bottom, states "have an important interest in requiring some preliminary showing of a significant modicum of support before printing a candidate's name on the ballot." *Prestia*, 178 F.3d

15

at 88 (quoting *Jenness*, 403 U.S. at 442). The fact that a candidate has either won a primary election or collected a specified number of signatures does show that the candidate has "a significant modicum of support," but these are not the only indicia by which New York could reasonably determine that a candidate has sufficient backing. In New York, political parties must demonstrate considerable support in recent elections to maintain their status as political parties. *See Walden*, 153 F.4th at 124 (citing N.Y. Elec. Law § 1-104(3)) (explaining that an organization may maintain its status as a political party only if its "candidates for Governor of New York and President of the United States, in their respective preceding elections, each received at least two percent of the total votes cast or 130,000 votes, whichever is greater."). In the context of a special election, where a replacement elected official must be selected promptly in order to prevent constituents from lacking political representation, the fact that a candidate has been selected by a political organization whose candidates recently obtained more than 130,000 votes is itself a reasonable indicator of "a significant modicum of support." *Prestia*, 178 F.3d at 88. States are entitled to limit ballot access only to candidates who plausibly have meaningful support, *Munro*, 479 U.S. at 193, and the Supreme Court and Second Circuit have explicitly upheld laws that require independent candidates to demonstrate such support by meeting requirements from which major party nominees are exempt, *Kuntz*, 113 F.3d at 29; *Jenness*, 403 U.S. at 442. The Court therefore finds that plaintiff has failed to state a claim that New York's differential treatment of party-nominated candidates and independent candidates in special elections violates the Equal Protection Clause. Accordingly, plaintiff's claims premised on this theory must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

                                                       _/s/ Natasha C. Merle_
                                                       NATASHA C. MERLE
                                                       United States District Judge

Dated:      January 30, 2026
              Brooklyn, New York